## Case No. 8,267.

### LE ROY v. CHABOLLA et al.

[2 Abb. (U. S.) 448; 1 Sawy. 456.] [1]

Circuit Court, D. California. Jan. 28, 1871.

CONSTRUCTION OF STATUTES—MEXICAN LAND GRANTS.

1. Where several statutes upon the same general subject are inconsistent or doubtful in meaning, they should be examined together, and the probable intent of the legislature, as ascertained from the acts in their connexion, and from the attending circumstances, should be carried into effect.

2. The act of the legislature of California of March 17, 1866 [St. Cal. 1865–66, p. 246], declaring lands of the city of San Jose "not hitherto disposed of by ordinance," &c., to be vested in the corporate authorities of the city in trust for the use and benefit of the public schools,—was not intended, and therefore did not operate as a confirmation of the previous sheriff's sale of lands in that city attempted to be made under the ordinance of November 10, 1851.

[This was an action of ejectment by Theodore Le Roy against Jose A. Chabolla and others. Tried by the court, the parties having duly waived a jury.]

J. B. Felton and A. J. Moultrie, for plaintiffs.

F. E. Spencer, for defendants.

SAWYER, Circuit Judge. This is an action against some four hundred and fifty defendants, to recover a large portion of the city of San Jose and of the county of Santa Clara. The case is, therefore, one of great importance. The first question presented is, whether section 73 of the act of March 17, 1866,—to "re-incorporate the city of San Jose,"—properly construed, confirms and renders valid the confirmation of sheriff's sale, and release of the corporation to the purchasers thereunder, of all the Pueblo lands attempted to be made by an ordinance of the common council of the city of San Jose, approved November 10, 1851, mentioned in the agreed statement of facts. If not, then, there must be judgment for the defendants; for the plaintiff's title depends upon this provision of the statute.

In order to give a proper construction to this section, it will be necessary to consider the condition of things upon which the act was intended to operate, at the time of its passage. On May 28, 1851, all the Pueblo lands of the city of San Jose, being many

1 [Reported by Benjamin Vaughan Abbott, Esq., and by L. S. B. Sawyer, Esq., and here compiled and reprinted by permission.]

leagues in extent, were sold by the sheriff of Santa Clara county in one parcel, and at one bid, under an execution issued upon a judgment against the mayor and common council of the city of San Jose, which municipal corporation had succeeded to the interest of the Pueblo. On June 12, 1851, the mayor of San Jose, assuming to act on behalf of the city, in pursuance of a resolution of the common council, signed a contract with the representatives of the purchasers at said sale, as parties of the first part, under which sales of said land were to be made, and after paying the amount of the judgment, expenses, &c., the proceeds were to be divided in certain designated proportions between the parties and the city; and by the provisions of said contract, the said parties of the second part (the mayor and common council) ratify and confirm the said sheriff's sale, and release to the said purchasers thereunder, the interest of the city of San Jose in said lands. Said ordinance purported to ratify and confirm said contract, and authorized the mayor to sign any deeds or contracts necessary to carry it into effect.

Between the said June 12, 1851, and April 21, 1858, the representatives of said purchasers at sheriff's sale, and the mayor of said city, in pursuance of said agreement, ordinance, &c., sold and conveyed to private parties, tracts of said land, in number more than fifty, and, in the aggregate, amounting to more than five thousand acres. And between said dates last named, said representatives of the said purchasers alone conveyed other tracts of said lands, amounting in the aggregate, also, to more than five thousand acres.

Subsequently, in 1864, it was held by the supreme court of the state, that the said sheriff's sale, contract, ordinance, &c., and the titles derived thereunder, were absolutely void, and that the title of the city of San Jose in the Pueblo lands was in no way affected thereby; the supreme court affirming the judgment of the district court rendered therein early in 1862. But the principles upon which the determination rested had been long before settled by the supreme court in other cases.

On April 21, 1858, the legislature passed an act authorizing the funding of the floating debt of the city of San Jose, and to provide for the payment thereof [St. Cal. 1858, p. 193]. By section 10 of this act, the board of trustees of the city of San Jose were required to convey to the commissioners of the funded debt, provided for in the act, all the lands, and right in and claim to the same, held or owned by the former Pueblo de San Jose, to be held in trust for the payment of said debts, and authorized them to sell and convey the same for said purposes, in such manner as they should deem the interests of the city to require.

In pursuance of this act, on August 4, 1858,

the city, by its proper officers, conveyed all said Pueblo lands to said commissioners. The said commissioners of the funded debt, between the last named date and January 17, 1866, in pursuance of the provisions of said act, executed and delivered more than four hundred deeds to private individuals in severalty, of lots within and lands without the city limits, amounting in the aggregate to more than twenty-five thousand acres of said Pueblo lands; and their vendees went into possession thereof. So, also, at divers times between March 27, 1850, and said April 21, 1858, the mayor and common council of San Jose, by ordinances and deeds of conveyance, conveyed in fee to various individuals small lots and tracts 'of said lands, to the number of more than fifty, and amounting in the aggregate to more than fifteen hundred acres of land.

On January 17, 1866, all the debts of said city existing on April 21, 1858, had 'been paid off by said commissioners, and, on that day, the legislature passed an act reciting said fact of payment, and abolishing said commission [St. Cal. 1865–66, p. 15]. Said act provided, that said commissioners should reconvey to the mayor and common council of San Jose, all said Pueblo lands not already sold to private parties by said commissioners, and then authorized the mayor, in such manner as the common council should direct, to sell and dispose of all said lands, and invest the proceeds in certain bonds mentioned, for the benefit of the public school fund of said city. In pursuance of the provisions of said act, said commissioners did, on January 26, 1866, re-convey to said mayor and common council of San Jose, all of said Pueblo lands before conveyed to them as before stated, not sold by them to private parties; and at the time of said re-conveyance, there remained of said lands, which had not been sold or otherwise conveyed, or disposed of, by said commissioners, more than thirty thousand acres.

This being the condition of affairs on March 17, 1866, on that day the legislature passed the said act to re-incorporate the city of San Jose, section 73 of which is the one to be construed. It provides that "All lots known as the school lots, and all lots and lands, either within or without the corporate limits of the city of San Jose, dedicated and belonging to said city, not hitherto disposed of 'by ordinance, or sold, and by deed transferred to individual purchasers, either by the common council or by those acting as commissioners of the funded debt of said city (and which sales and transfers are hereby declared valid), are hereby fully vested in the mayor and common council of said city, in trust for the use and benefit of the public schools of the city of San Jose; and the mayor and common council are hereby authorized to sell, transfer, or exchange the same for other lots and lands, if in their opinion the interests of the public schools will be best secured by so doing, and all money received from such sales shall not be diverted from the school fund of said city." St. 1865–66, p. 268, § 73.

This provision, and the several other acts of the legislature referred to, relating to the Pueblo lands, are in pari materia, and should be read together in order to get at the intention, if the construction of the latter provisions can be regarded as doubtful. Did the legislature mean by the term, "not heretofore disposed of by ordinance," to include the said ordinance of November, 1851, by which the sheriff's sale was attempted to be confirmed? If so, then, they might have said so in terms about which there could be no doubt, and have stopped there, for there would have been nothing more to say. There would have been no other lands for the statute to operate upon, and all other provisions would have been useless. If it was intended to make the disposition attempted by that old ordinance valid, it took all the Pueblo lands, and went behind all their subsequent sales and transfers. The truth is, that all the legislation on the subject of the Pueblo lands had, therefore, gone upon the assumption, that those transactions in 1851 were utterly void, as they in fact were, and have been so held by the highest court of the state. The legislature of 1858, which passed the funding act, acted upon that hypothesis. It wholly ignored the existence of those early void acts, and proceeded upon the idea that the Pueblo lands were still owned by the city of San Jose. When it established the fund commission, and provided for funding the debt of the city existing prior to April 21, 1858, it set apart all these Pueblo lands as a fund for securing the payment of said debt, and provided that the city authorities should convey the lands to the fund commissioners for that purpose, and authorized and required said commissioners to sell them for the purposes of the trust. And the commissioners did proceed to execute this trust, and so managed the affairs under the law that, in the course of eight years, during which time they had sold more than twenty-five thousand acres of the same lands to private parties, who settled on and occupied them, they paid off the entire debt, and the object of their trust was fully accomplished.

The legislature, in January, 1866, again legislated upon the subject, wholly ignoring the transactions of 1851, and in an act reciting the full performance by the commissioners, of their trust, abolished the fund commission, for which there was no further use, and directed the commissioners to re-convey the Pueblo lands yet unsold, of which there were more than thirty thousand acres left, to the city of San Jose, and provided that the mayor should sell them, &c., and invest the proceeds in certain bonds for the use of its public schools. It deals with these lands in all respects as if they still belonged to the city. Again, the legislature deals with the subject, as it necessarily must do, in the act under

consideration, to re-incorporate the city. It is the same legislature that passed the act of January 17, 1866, and it was at the same session. They do not return to this subject as a special subject of legislation, but they necessarily have to deal with it as incidental to another act of legislation. Do they indicate any change of purpose? None at all; for in section 73, they still provide that all lands—and there are none other—are hereby fully vested in the mayor and common council of said city in trust for the use and benefit of the public schools of the city of San Jose—the same as provided in the act passed at the same session, some two months before. It was not its purpose, then, to take them from the public schools, and give them to parties who set up a void claim to them, which arose some sixteen years before. If the construction claimed for the provision is to be sustained, this plain intention would be wholly subverted, and by far the largest portion of the provision would have nothing upon which to operate. Whereas, by reading the section in connection with the prior acts, and the proceedings under them, and considering it in connection with the intention before expressed, and the condition of things existing at the time, every word can have effect, and such effect will be in exact harmony with the prior action of the legislature. It was, in my judgment, only intended to carry out to its results the policy before adopted, and to validate such acts as might be thought to have been irregularly performed in carrying out that policy, and to confirm such disposition as the mayor and common council had made by ordinances and conveyances in the ordinary course of the administration of the city affairs in harmony with the legislative policy before adopted. I cannot think it was designed to subvert its prior policy, or to vivify an old, void, extraordinary, and probably long-forgotten claim, so out of harmony with all prior legislation, and the other provisions of the same act. The legislature could not have intended to take from the public schools of San Jose, to the use of which they had already been solemnly dedicated by an act recently passed by the same body, all the Pueblo lands, or all that remained of them, and donate them to the claimants under the purchases at the sheriff's sale of 1851, and at the same time continue to devote them to the use of said schools. It was necessarily intended that one or the other should have them; for both cannot have them at the same time. That construction, then, must be adopted, which is most clearly expressed, and the other rejected. To my mind, it is clearly manifest, from the full and particular language used, that the design was to devote the lands to the public schools, as had been before provided. The other view, then, cannot express the true legislative intent, and to adopt it, would be to give effect to general, loose, and obscure terms, rather than to those that are full, clear, and unmistakably explicit. A construction of the section that would validate the title originating in the sheriff's sale of 1851, would, in my judgment, lead to inconsistent, not to say absolutely absurd results. It is worthy of observation, that this is not the first instance in the legislature of the state of California, wherein a loose, parenthetic grant, or confirmation of grants of lands, carelessly or covertly, as the case may be, introduced into acts passed for other purposes, has given rise to uncertainty and litigation.

Upon the view taken, the plaintiff has no title, and it is unnecessary to examine the other questions discussed. The lands so conveyed to the city of San Jose by said commissioners, have, since the reconveyance, and before the commencement of this suit, been conveyed in small parcels by the mayor and common council of said city, to divers private parties, in pursuance of said act of March 17, 1866, and many of the defendants hold under said conveyances. Let judgment be entered for defendants, with costs of suit. Judgment accordingly.